Dissenting Opinion.
Manning, O. J.
I think the plea of prescription should be sustained. In my opinion, it was not intended by the legislature, in passing the-act of 1853, to permit any other method of preventing the prescription of judgments, save that of a citation for its revival. In framing that law, the General Assembly must be presumed to have taken into consideration all the possible modes of acquiring prescription of obligations, and of interrupting or suspending it. The law about to be framed was an innovation of a mrst serious kind, and the consequences of such an enactment must have been foreseen. Notwithstanding those possible consequences, which did not require any special sagacity to discern, it was enacted that judgments should be prescribed by the lapse of ten years, provided however .that the party who wishes to keep them alive might have them revived by pursuing a specified course. The Soniat judgment, which opponent now owns, has never been revived, nor has citation to revive been served upon the representative of the defendant in the judgment. Ten years have passed since its rendition, and I think the plea fatal to its continued existence. Sue. Hardy, 25 Annual, 489. Smith v. Palfrey, 28 Annual, 615.
Even if its acknowledgment by an administrator, or the placing it on a tableau of debts, were sufficient to interrupt prescription, (and I do not think it is of a judgment) in this case, so far from there being any acknowledgment that the Soniat judgment was a valid claim against the succession, it was constantly disputed — it was not recognized as one of the liabilities of the succession, and it was not until a decree of this *1081 court was made, directing that the executor oí Patrick should place it -on his tableau, that any recognition of it was ever made. • When that decree was made, the judgment was not prescribed — ten years had not ■elapsed — and it was therefore properly made, but. in the interim, the full term has passed, and the plaintiff or her assignee has neglected to issue any citation for revival, and. the judgment has, as I think, become ■extinct.
The difficulty lies in the construction of the act of 1858, which is ■said in the Opinion of the court to be a legislative interpretation of the •■act of 1853. There is so much force in this position that at first glance it seems conclusive. Nevertheless I do not adopt it.
The first section of that Act, the object of which was to require written proof in certain cases, prohibits parol evidence being received to prove any acknowledgment to pay any judgment for the purpose of taking it out of prescription, or to recover it after prescription has been •completed, but requires such acknowledgment to be in writing. It may be very pertinently asked, if nothing but a citation to revive can prevent the acquisition of prescription, why prohibit a parol promise from producing that effect, and why enact that the promise must be in writing ?
I do not think the act of 1858 can be held to be, or that it ever was supposed to operate, a repeal of that of 1853, and the latter had expressly enacted that the judgment should be prescribed in ten years, providing however that this might be prevented by a citation to revive. It was supererogatory for the legislature to say in 1858 that a parol promise to pay a judgment should not interrupt or prevent prescription, but that the promise must be in writing, because at that time it was positive law that neither the one nor the other could produce that effect ■so as to revive the judgment. The act of 1853 had rigorously declared that 1he lapse of ten years would inevitably destroy a judgment unléss"the party owning it shorild before the completion of that period cite the judgment debtor to revive it. It was superfluous afterwards to say, a parol'promise to pay should not enable one to recover it, for neither parol nor written plromise could effect its revival. It should be observed that the act of 1858 does not enact in positive terms that a written promise shall interrupt prescription, and thereby repeal pro tanto the act of 1853, but that hereafter parol evidence shall not be received to prove any acknowledgment of a judgment, but the same must be in writing. The prohibition was unnecessary, because after you had received in evidence both the parol and the written promise, and the proof of acknowledgment was complete, you were as far as ever from'keeping the judgment alive, inasmuch as the law of 1853 had stricken it with an incurable paTalysis, if its holder had neglected to have issued a citatiomfor its revival.
*1082 There are peculiarities of diction in both the'texts of the law of 185S which strengthen my construction of it, if they affect it a‘ all. The word ‘ recover ’ in the first section has recouvrer in the corresponding text, so that we are not left free to conjecture that ‘revive’ was intended to be used, as.we certainly should if. ‘revivre’ was in the correspondingErench text.
The law of 1858 then is, that you must have a written promise to-pay a judgment in order to take it out of prescription,- or to recover it after prescription has been completed. The law of 1853 had already-enacted that prescription was completed in ten years unless you had commenced proceedings to revive. The harmonious construction of the two-laws is, that a citation to revive, timely served, keeps the. judgment continuously alive, while a written promise or -acknowledgment will enable-you to recover the judgment, after prescription has been completed— will enable you to revitalize it.
But in that case, you must bring your suit'on the extinct judgment, and shew your right to recover by proving the written promise or acknowledgment. Nothing of that kind has been done here — nothing has-been done at all, except to contest the accounts or tableaux of the administrator of the deceased judgment debtor.'
There is still another fatal objection ■ to the construction of the majority of the court. The act of 1858 is now sec. 2818 of the Revised Statutes of 1870. The act of 1853 is now art. 35-17 of the Revised Civil Code. Where these conflict, the Code must prevail. The act of 1853’ must then prevail over that of 1858, and the enactment which imperatively requires a citation to revive as the only method of keeping alive a judgment, or of preventing prescription, is the paramount law. How-then is it possible for this Soniat judgment to escape an extinction, twice-pronounced by the legislative will as sure to befall all judgments that have not been revived, or the judgment debtor cited for revival withira ten years ?